UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAUL B.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-531-MLP

**ORDER**

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by finding at step three that he did not meet any listed impairment, and by discounting his own testimony as well as the opinions of treating providers. (Dkt. #10 at 1-2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.     BACKGROUND

Plaintiff was born in 1966, has a high school diploma and some college education, and has worked as a construction laborer, dishwasher, electrical apprentice, and housekeeper. AR at 332, 350. Plaintiff was last gainfully employed in June 2014. *Id.*

On May 31, 2016, Plaintiff applied for benefits, alleging disability as of January 1, 2010.

ORDER - 1

AR at 165, 295-310. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. AR at 196-204, 208-17. After the ALJ conducted hearings in November 2017 (AR at 97-140), the ALJ issued a decision finding Plaintiff not disabled. AR at 15-25.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since May 31, 2016.

Step two: Plaintiff's affective-related disorders, trauma- and stress-related disorders, and anxiety disorders are severe impairments. Since October 19, 2016, Plaintiff's status-post chest/abdominal trauma is an additional severe impairment.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform work at all exertional levels with additional limitations: he can remember, understand, and carry out instructions for tasks generally required by occupations with a specific vocational preparation of 1-2. He can have occasional superficial interaction with the general public, and occasional interaction with co-workers or supervisors. His job tasks should be able to be completed without the assistance of others but occasional assistance could be tolerated. Job tasks should not require extended conversations with co-workers or supervisors.

Since October 19, 2016, Plaintiff has had additional limitations: he can perform light work, and can stand/walk in two-hour intervals for eight hours per day and sit without restriction. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can have occasional exposure to extreme heat, extreme cold, wetness, vibrations, or atmospheric conditions. He can tolerate a noise level of 3 or less, as defined in the Dictionary of Occupational Titles. He cannot work at exposed heights or operate heavy equipment, but can otherwise have occasional exposure to hazards.

Steps four and five: Plaintiff could perform past relevant work as a kitchen helper before October 19, 2016, and since that time there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, Plaintiff is not disabled.

AR at 15-25.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A. The ALJ Did Not Err at Step Three**

Plaintiff argues that the ALJ erred in finding that he did not meet any of the mental

disorders listings at step three. To satisfy the relevant listings, Plaintiff's mental impairments must cause one "extreme" or two "marked" limitations in the "paragraph B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). The ALJ found that Plaintiff's limitations were either mild or moderate, and thus Plaintiff did not satisfy the "paragraph B" criteria. AR at 18-19.

Plaintiff points to evidence that he contends shows that his limitations should have been found more severe than "mild" or "moderate." (Dkt. #10 at 16-18.) The ALJ cited substantial evidence to support his conclusions, and the Court declines to reweigh the evidence in the manner requested by Plaintiff. Plaintiff has not established that the ALJ's interpretation of the record is not supported by substantial evidence, or is unreasonable, and therefore has failed to establish a step-three error. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that the claimant is not disabled.").

**B.    The ALJ Did Not Err in Assessing Medical Opinions or Plaintiff's Testimony**

The ALJ gave little weight to opinions written by Plaintiff's treating psychologist, Paula Sigafus, Ph.D., and treating psychiatrist, Carolyn Brenner, M.D., finding the opinions inconsistent with Plaintiff's treatment record and activities. AR at 22.[3] The ALJ cited these same reasons for discounting Plaintiff's testimony. AR at 20-21. The ALJ also found that Dr. Brenner's opinion was inconsistent with her examination findings. *Id*. The Court will address

---

[3] The ALJ also cited Plaintiff's gap in treatment as a reason to discount the disputed medical opinions and Plaintiff's testimony, and the Commissioner concedes that there is no such gap. (Dkt. #13 at 7.) This error is harmless, however, in light of the ALJ's other independent reasons to discount the opinions and Plaintiff's testimony. *See, e.g.*, *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

ORDER - 4

the sufficiency of each of the ALJ's reasons in turn.

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen v.*

*Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Reddick*, 157 F.3d at 722.

  2.  *Improvement with treatment, situational stressors, and exaggeration*

  The ALJ discounted Plaintiff's testimony, Dr. Sigafus's December 2017 checkbox form opinion (AR at 1577-81), and Dr. Brenner's March and October 2017 opinions (AR at 1370-73, 1582-88) as inconsistent with Plaintiff's treatment record, which showed improvement with treatment and exacerbations in the context of situational stressors (such as homelessness and housing problems, and lack of disability benefits), rather than impairments. AR at 20-22. The ALJ also found that the record showed that Plaintiff embellished his symptoms, "especially if he thinks it will get him something." AR at 21, 22.

  Substantial evidence in the record does show improvement with treatment. *See, e.g.*, AR at 425 (describing improvement since the start of treatment), 1014 (describing improvement with medication), 1233 (describing improvement of symptoms, and that recent start of psychotherapy has been helpful), 1266 (treatment note indicating that Plaintiff's depression, anxiety, and post-traumatic stress disorder symptoms were better now than in the past), 1486 (treatment note describing improvement with medication, with better control of anger and less severe depression).

  The ALJ also found that the record indicates a link between exacerbation of symptoms and non-impairment-related situations, and this finding is supported by substantial evidence.[4] AR at 20-21. Plaintiff's involuntary inpatient psychiatric treatment, for example, was preceded

---

[4] The ALJ stressed that Plaintiff was focused on his lack of disability benefits and his housing problems. AR at 20-22. Indeed, Plaintiff referenced these issues during nearly all of his appointments. *See, e.g.*, AR at 431, 435, 441, 450, 487, 513, 521, 549, 576, 655, 667, 715, 724, 746, 750, 754, 758, 765, 773, 779, 783, 789, 835, 932, 934, 975, 1233, 1374, 1415, 1433, 1455, 1529. That focus does not necessarily undermine his allegations or his providers' opinions, however. Even if this reasoning was erroneous, the ALJ cited other legally sufficient reasons to discount that evidence, and therefore any error is harmless. *See Carmickle*, 533 F.3d at 1162-63.

1 by weeks of Plaintiff's refusal to take his prescribed medication, and urine testing revealed the
2 presence of marijuana and cocaine on the date of his admission, though he denied using either.
3 AR at 1450-51.

4 Likewise, there is evidence in the record that Plaintiff exaggerates in order to provoke a
5 response. *See, e.g.*, AR at 435 (Dr. Brenner's note that at the beginning of Plaintiff's treatment
6 "he reported intermittent thoughts about hurting self or others many times – all appeared
7 contingent on not getting what he wants[,] including SSI money"), 773 (during an appointment
8 after a fall, Plaintiff's provider describes him as "quite irritable" about being denied benefits and
9 saying "The state doesn't want to help me? They want me to be crazy? Well, I'll show them just
10 how crazy I can be!"), 1455 (during his inpatient psychiatric treatment, Plaintiff's "threats of
11 violence seem to be inflammatory, are presented with a lack of seriousness and seemingly a
12 desire to provoke a reaction in his care team").

13 These parts of the record undermine Plaintiff's allegations as well as the opinions written
14 by Plaintiff's providers, and are legally sufficient reasons to discount both Plaintiff's testimony
15 and his providers' opinions. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)
16 ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of
17 disability."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper
18 to reject an opinion presenting inconsistencies between the opinion and the medical record);
19 *Thomas*, 278 F.3d at 957 (stating that ALJ may consider improvement with treatment in
20 discounting physician's opinion); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)
21 (holding that a credibility determination based on, among other things, a tendency to exaggerate,
22 was supported by substantial evidence); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595,
23 599-600 (9th Cir. 1999) (contrary to plaintiff's claims of lack of improvement, physician

reported symptoms improved with use of medication, which supports ALJ's rejection of plaintiff's testimony). Because this reasoning supports the ALJ's assessment of Plaintiff's testimony as well as the opinions of Drs. Sigafus and Brenner, those portions of the ALJ's decision are affirmed.

3. *Physical condition and activities*

The ALJ noted that Plaintiff was stabbed in October 2016, but found that he physically "healed well," as evidenced by full strength in extremities on testing and Plaintiff's refusal to engage in physical therapy for alleged abdominal pain. AR at 21. The ALJ noted that even since the stabbing, Plaintiff walks everywhere he goes, including a half-mile uphill for appointments and to and from the grocery store. *Id*. The ALJ concluded that Plaintiff did not have physical limitations stemming from the stabbing. *Id*.

In disputing whether he "healed well," Plaintiff points to complications arising shortly after the stabbing, but these complications resolved within months and thus did not satisfy the twelve-month durational requirement. (Dkt. #10 at 7.) Plaintiff also alleges that he had trouble walking due to chronic pain, yet he testified that he walked everywhere he went, including to his medical appointments and the grocery store. AR at 105, 113-14, 1147, 1309. Moreover, despite Plaintiff's arguments at the hearing and in his briefing, in his agency paperwork completed the month after the stabbing, Plaintiff denied any physical limitations. *See* AR at 364. To the extent that Plaintiff subsequently alleged physical limitations, the ALJ did not err in finding those allegations to be inconsistent with the record.

4. *Inconsistent activities*

The ALJ discounted the opinions of Drs. Brenner and Sigafus in part because Plaintiff's activities demonstrated he was more functional than these providers found him to be. AR at 22.

Plaintiff disputes this reasoning, citing treatment notes that he contends the ALJ ignored and which show him to be less functional than the ALJ found. (Dkt. #10 at 11 (citing AR at 80, 91-92, 1066, 1228, 1416).) Some of the citations mentioned by Plaintiff do describe exacerbations of symptoms, but these flares occurred at a time that Plaintiff was not taking his medications and/or using substances (AR at 1416, 1449), while others do not contradict the ALJ's findings (AR at 1066, 1127-28).[5] The ALJ did not err in relying on inconsistent activities in discounting Plaintiff's subjective allegations.

 5. *Inconsistent treatment notes*

As an additional reason to discount Dr. Brenner's March 2017 opinion, the ALJ cited her contemporaneous mental status examination, which he found to be inconsistent with her conclusions. AR at 22. For example, Dr. Brenner's examination notes describe Plaintiff's attitude as pleasant and cooperative, and she indicated that he engaged well in conversation. She also stated that Plaintiff's thought process and content, memory, and fund of knowledge were within normal limits, with deficits in concentration sometimes. AR at 22. The ALJ reasonably concluded that these findings are inconsistent with the marked and severe social and cognitive limitations Dr. Brenner assessed. AR at 1371-73.

Plaintiff argues that Dr. Brenner's opinion was informed by her treating relationship, rather than her contemporaneous examination. (Dkt. #10 at 13.) Plaintiff cites no portion of Dr. Brenner's opinion that suggests this is the case; the form asks Dr. Brenner to indicate how long her opined limitations would accurately describe Plaintiff, and she indicated she was unsure. AR

---

[5] Some of the records cited by Plaintiff were not before the ALJ. *See* AR at 80, 92-92. The Appeals Council stated that it did not consider or exhibit this evidence. AR at 2. Although Plaintiff cites this evidence as evidence that the ALJ "ignored," the ALJ could not have considered this evidence because it was not in the record at the time of the ALJ's decision. (Dkt. #10 at 11.)

at 1372. Thus, it is not clear how comprehensive Dr. Brenner intended her opinion to be. In any event, the ALJ did not err in considering whether her opinion was consistent with her contemporaneous notes, in the context of the entire record, and this is a legitimate reason to discount the opinion. *See Bayliss*, 427 F.3d at 1216 (affirming an ALJ's rejection of a treating doctor's opinion because it conflicted with his contemporaneous clinical notes, along with his other recorded observations).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

DATED this 1st day of April, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge